GEORGE E. KING & another *vs.* LINUS C. BIRD & another.

Suffolk.    January 24, 1889. — February 28, 1889.

Present: MORTON, C. J., FIELD, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Lease — Covenant for Quiet Enjoyment.*

A person occupying a building without a lease signed by the owner, or by any one in his behalf, gave a lease of a part thereof containing a covenant for quiet enjoyment. The owner claimed possession, notified the lessee that such person had no right to give a lease, and that, if the lessee should hold over after a day named, he should take the necessary legal steps to terminate his occupation; and such lessee then vacated the premises, with the consent and by the virtual request of the person who gave him the lease. *Held,* that the lease was invalid, and that the lessee might properly yield to the owner's demand without losing his remedy on the covenant for quiet enjoyment.

CONTRACT by the plaintiffs, doing business under the firm name of C. E. Folsom & Co., for breach of a covenant for quiet enjoyment under a lease. At the trial in the Superior Court, without a jury, before *Barker*, J., the evidence was substantially as follows.

In April 1886, John D. Bates, the owner of a building on Hamilton Street in Boston, was in Europe, the building during his absence being in charge of his agent, Edward F. Thayer. Thayer made out in duplicate a writing, dated April 12, 1886, purporting to be a lease of the building from Bates to the defendants, for the term of four years and three months, at a rental of $2,750 per annum, payable monthly, and containing, among other things, a covenant against underletting without the lessor's written permission. This instrument was signed in duplicate by the defendants only, both individually and as a firm, and while it bore a seal intended for the seal of Bates, it was not signed by him or by any one in his behalf. Trusting to their supposed leasehold title, the defendants entered upon the premises, put in fixtures at great expense, advertised themselves as located in the building, and established their business there, and paid rent monthly, according to the terms of the instrument referred to. Thayer told the defendants, that, as long as they paid the rent, it was evident that they were occupying the building according to Bates's permission. The defendants then gave to the plaintiffs a written lease of the ground floor and basement of the building, for a term of four years and three months from October 1, 1886, at a rental of one thousand dollars per annum, the lease containing the following covenant: The plaintiffs and their representatives, " paying the rent as aforesaid and performing the covenants herein contained on their part to be paid and performed, shall peaceably hold and enjoy the said rented premises without hindrance or interruption" by the said defendants, or any person or persons whomsoever. Upon the making of the lease from the defendants to the plaintiffs, the latter took possession of the premises demised to them, with the knowledge of Thayer, who still continued to receive rent from the defendants.

Subsequently, within a month or six weeks after April 12, 1886, Bates returned to Boston. When he found that the de-

fendants were occupying the building, and that they had under-let a portion of it to the plaintiffs, and that the plaintiffs were dealers in paints, varnishes and oils, he refused to execute the instrument referred to, or any lease in writing, to the defendants while the plaintiffs were there, and so told them ; and also that the plaintiffs must go, and the defendants too, if they could not induce the plaintiffs to go. Several months afterwards, Bates, without any entry for breach of condition, sent the following notice to the plaintiffs, and a similar notice to the defendants : "Boston, July 20, 1887. To Messrs. C. E. Folsom & Co., 16 Hamilton Street. Gentlemen, I have this day notified Messrs. Bird and Stevens, occupying the premises belonging to me, numbered 14 and 16 Hamilton Street, in this city, to vacate the same on the first day of September next. Having been informed that you are occupying a portion of said premises under a lease of the same to you by Bird and Stevens, I desire to notify you that the latter had no legal right whatever to give you such a lease, and that, if you hold over after the first day of September next, I shall take the necessary legal steps to terminate your occupation of the premises. John D. Bates." The defendants were desirous to have the plaintiffs go out, so that they themselves could remain, stating that they would pay the plaintiffs' expenses of moving, and telling them that, if they went, the defendants would not be obliged to go, and that Bates would give them a lease if the plaintiffs went, and not before; but that if the plaintiffs did not go, then that both plaintiffs and defendants would be driven out by Bates ; but the defendants never notified the plaintiffs in writing to vacate, and continued to pay their rent. The plaintiffs vacated the premises before September 1, 1887, by reason of the notice from Bates, and the next day after they vacated Bates gave a written lease of the building to the defendants, who continued to occupy it.

The defendants requested the judge to rule: " 1. That at the time of the notice from Bates to the plaintiffs, and at the time the plaintiffs quitted the portion of the premises demised to them, the instrument of April 12, 1886, between Bates and the defendants, above referred to, was a subsisting and valid lease at law, according to its terms. 2. That the plaintiffs were not entitled to recover judgment against the defendants. 3. That

the plaintiffs were entitled to recover no more than nominal damages."

The judge refused so to rule, and found for the plaintiffs; and the defendants alleged exceptions.

*H. P. Fellows*, for the defendants.

*A. W. Boardman*, for the plaintiffs.

C. ALLEN, J. The defendants held no lease signed by Bates, the owner of the premises, or by any one in his behalf, and their lease to the plaintiffs was not valid.

The plaintiffs had no defence against the title of Bates. He claimed possession, gave formal notice to the plaintiffs that the defendants had no legal right to give the lease to them, and that if the plaintiffs should hold over after a day specified, he should take the necessary legal steps to terminate their occupation. The defendants knew that Bates insisted on the plaintiffs vacating the premises, and suggested no defence against him, and did not ask the plaintiffs to resist him, but on the contrary they reinforced his demand for possession, not by a formal notice in their own names, but by what was in substance a personal request. In leaving the premises, the plaintiffs did not act against the express or implied consent of the defendants, but with their consent and by their virtual request. Even without such consent, they might properly submit to the inevitable; but with such consent it becomes extremely clear that they might yield to the threat of Bates to turn them out, without losing their remedy on the covenant. *Hamilton* v. *Cutts*, 4 Mass. 349. *Sprague* v. *Baker*, 17 Mass. 586. *White* v. *Whitney*, 3 Met. 81, 89. *George* v. *Putney*, 4 Cush. 351. *Whitney* v. *Dinsmore*, 6 Cush. 124, 128. *Holbrook* v. *Young*, 108 Mass. 83.

*Exceptions overruled.*